UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATRINA A. NEILSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:18-cv-1168 AC<br><br><br>ORDER |

Petitioner seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, petitioner's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels …").

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on September 14, 2014. Administrative Record ("AR") 15 (Decision).[2] The disability onset date was alleged to be February 17, 2014. AR 15. The applications were disapproved initially and on reconsideration. AR 15. On February 24, 2017, ALJ Peter F. Belli presided over the hearing on plaintiff's challenge to the disapprovals. AR 46-102 (transcript). Plaintiff, who appeared with her counsel, Mr. James Pi, was present at the hearing. AR 15. Ms. Lisa Suhonos, a Vocational Expert ("VE"), also testified at the hearing. Id.

On July 19, 2017, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d) and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C § 1382c(a)(3)(A). AR 15-26 (decision), 27-31 (exhibit list). On March 21, 2018, after receiving "Request for review of hearing decision from Mario A. Davila, Binder, dated July 28, 2017" and "Brief from Carolyn A. Costello, Binder dated September 1, 2017" as additional exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on May 9, 2018. ECF No. 1; see 42 U.S.C. § 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 9, 16. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 19 (plaintiff's summary judgment motion), 20 (Commissioner's summary judgment motion), 23 (plaintiff's reply regarding Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1987, and accordingly was 27 years old on the alleged disability onset date, making her a "younger person" under the regulations, when she filed her application.[3] AR 25. Plaintiff has at least a high school education and can communicate in English. AR 25.

---
[2] The AR is electronically filed at ECF Nos. 12-3 to 12-50 (AR 1 to AR 2945).
[3] See 20 C.F.R. § 404.1563(c) ("younger person").

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

4

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 30, 2017.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity (SGA) since February 17, 2014, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: left leg injury, reflex sympathetic dystrophy, hip pain, complex regional pain syndrome, migraines, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 916.926).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for 8 hours in an 8-hour day with normal breaks; sit/stand for approximately 1 hour with changes of position while not leaving the work station; and stand/walk for 6 hours in an 8-hour day with no prolonged walking (longer than 30-40 minutes). She is able to climb stairs occasionally; stoop, crouch, crawl, and kneel frequently; and is not to climb ladders, ropes and scaffolds, work at unprotected heights or around unprotected hazardous machinery. The claimant is able to maintain a work schedule; to make adjustments to changes in the workplace; to make workplace judgments; to receive, remember, understand and carry out simple

job instructions and occasionally complex and detailed instructions; and to interact with the general public, coworkers and supervisors.

6. [Step 4] The claimant is capable of performing past relevant work as a dispatcher, scheduler, checker and a deli worker. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

8. The claimant's marijuana usage is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.9635).

AR 18-26.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d) and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C § 1382c(a)(3)(A). AR 26.

## VI. ANALYSIS

Neilsen alleges that the ALJ erred (1) by failing to consider her obesity; (2) by failing to consider her need for a hand-held assistive device to ambulate; (3) in his assessment of her Mental Residual Functional Capacity (MRFC); (4) in discounting the opinions of her treating physician, Dr. Kuper; and (5) failing to properly consider lay witness testimony. ECF No. 19 at 5-17. Plaintiff requests that the matter be remanded to the Commissioner for an immediate award of benefits.

### A. The ALJ Did Not Err in Failing to Consider Obesity

Neilsen asserts that the ALJ erred by failing to consider her obesity in his RFC assessment. Though a claimant is not barred from bringing a new issue before a District Court upon review (see Sims v. Apfel, 530 U.S. 103, 112 (2000)), it is the claimant who "carries the initial burden of proving a disability," particularly when they are represented by counsel, and "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 682-683 (9th Cir. 2005). Additionally, "the burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Neilsen's representatives and physicians have consistently omitted obesity from their claims regarding her disability. AR 52-53 (counsel's case presented at hearing), 100-101 (counsel's hypotheticals to the vocational expert), 346 (disability report filled out by an intake specialist), 430-434 (counsel's brief to the Appeals Council), 1656 (Dr. Kuper's letter stating inability to work). However, obesity is present as a condition throughout Ms. Neilsen's medical records both explicitly (AR 561, 571, 941, 1028, 1323, 1626, 1640, 1662, 2263, 2289, 2290, 2314, 2334, 2423, 2521, 2523, 2531, 2534, 2567, 2571, 2574, 2576, 2579, 2774, 2776, 2799-2800, 2839, 2916) and implicitly through notations of a high BMI, weight gain, and references to weight management risk (AR 435, 437, 440, 442, 444, 452, 455, 457, 462, 467, 472, 474, 539, 547, 572, 584, 785, 810, 846, 884, 920, 1033, 1080, 1148-49, 1152, 1220, 1269, 1357, 1376, 1381, 1384, 1389, 1449, 1469, 1574, 1592, 1664, 2302, 2312-13, 2332, 2334, 2349-50, 2386, 2517, 2525, 2554-55, 2568, 2572, 2575, 2577, 2591, 2806-07, 2865). Obesity was also explicitly noted by State Agency medical consultants Drs. Dipsia, Barrons, and Klein. AR 111-12, 126-27, 144-45, 160-61.

Like the claimant in Burch, Neilsen's medical records show only that obesity was present as a condition; plaintiff has not pointed to any evidence of functional limitations due to obesity. See Burch at 683. Neilsen's medical record is silent as to whether and how her obesity might have exacerbated her condition, and her briefs provide no analysis, explanation, or references to the medical record to support any findings on that issue. See Farley v. Colvin, No. CV-14-08150-PCT-DGC, 2015 WL 1926815, at *5 (D. Az. Apr. 28, 2015) (unpublished). Neilsen makes the general point that obesity can exacerbate other conditions, but does not identify any specific functional limitations she has experienced. ECF 19 at 5-6, ECF 23 at 1-3. Therefore, the ALJ did not commit harmful error by basing his findings on the limitations that were supported by the record, without explicit reference to Neilsen's obesity.

    B. <u>The ALJ Did Not Err in Failing to Consider the Need for a Hand-Held Assistive Device to Ambulate</u>

The record before the ALJ indicated that Neilsen has been using a cane to ambulate for

the last several years, at least since 2012. See AR 472. Neilsen testified that the device was prescribed in 2010 by Dr. Bedell. AR 76, 363. However, there is no record or note attributed to a Dr. Bedell – let alone a prescription for an assistive device – in Neilsen's medical records. The ALJ's RFC finding did not include the use of an assistive device, citing claimant's ability to "walk and move in a satisfactory manner" and that there was "no indication of loss of control or muscle wasting in her legs due to nerve damage." AR 22-24. Neilsen contends that the failure to consider her need for a hand-held assistive device was error.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7. Mentions of a cane that are "traceable to plaintiff's self-reports and to [their] medical sources' observations that [they] presented with an assistive device" are not sufficient to constitute "medical documentation establishing the need for an assistive device." Flores v. Colvin, No. 1:14-cv-02096-SKO, 2016 WL 2743228, at *14 (E.D. Cal. May 10, 2016) (unpublished). Ultimately, "the fact that various medical providers noted [a claimant's] use of a cane [does not] establish the medical necessity of such a device." Greer v. Comm'r of Soc. Sec., No. SA CV 17-01316-DFM, 2018 WL 5885942, at *5 (S.D. Cal. Nov. 7, 2018) (unpublished) (citing Cashin v. Astrue, No. 09-161, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (unpublished); Quintero v. Colvin, No. 13-478, 2014 WL 4968269, at *10 (E.D. Cal. Sept. 29, 2014) (unpublished); Flores v. Colvin, No. 1:14-cv-02096-SKO, 2016 WL 2743228, at *14 (E.D. Cal. May 10, 2016) (unpublished)).

Neilsen's medical records are replete with observations from treating physicians that she uses a cane. AR 450, 454, 457, 462, 467, 474, 919, 941, 1022, 1024, 1079-80, 1268-69, 1323, 1555, 1690, 1696, 1701, 1726, 1728, 2094, 2096, 2423, 2591, 2701, 2865, 2932. The closest any of these documents come to establishing the need for a hand-held assistive device is a note by Neilsen's primary care provider, Dr. Godil, stating "[u]se cane" in the activities section of a home health referral. AR 2932. This note falls short of the standard set forth in SSR 96-9p as it does not provide the circumstances for which the cane is needed. See Tripp v. Astrue, 489 Fed.Appx.

8

951, 955 (7th Cir. 2012); see also Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002).

Neilsen has testified that the cane is primarily used for balance. AR 79. The only statements by medical professionals that come close enough to specifying the circumstances for which Neilsen requires a cane are notes by State Agency examiners Drs. Dipsia and Pong indicating that Neilsen "needs a [cane] for prolonged ambulation." AR 115, 130, 148, 164. However, the medical records noted that her balance and general ability to ambulate without assistance were intact. AR 532, 1592-93, 1625, 1627, 1641, 2423-24. Additionally, the same State Agency examiners above found that her "coordination was intact" and Dr. Klein found that there was no "support to show necessity for [an assistive device] for all ambulation." AR 111, 114, 126, 129, 144, 160. Accordingly, it was not error for the ALJ to exclude the need for a hand-held assistive device in his decision. Because prolonged ambulation is the only circumstance for which need of a hand-held assistive device has been indicated in the entirety of the record, and the ALJ precluded prolonged walking in his RFC, any such error would have been harmless. AR 98.

### C. The ALJ Properly Assessed Mental Residual Functional Capacity

The ALJ found that the severity of Neilsen's mental impairments did not meet or medically equal the criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.04 and 12.06. AR 18-19. Specifically, the ALJ concluded that plaintiff has (1) mild limitations in understanding, remembering, or applying information; (2) moderate limitations in interacting with others; (3) mild to moderate limitations in concentrating, persisting, or maintaining pace; and (4) mild limitations in adapting or managing oneself. AR 19. Neilsen alleges that the ALJ should have found her impairments to medically equal the listing criteria for disability, because her treating physician Dr. Kuper identified four areas corresponding to those in the above listings in which she was "markedly" limited. ECF 19 at 9. Neilsen makes an additional, difficult to decipher argument regarding the ALJ'S failure to align his assessment with the opinion evidence, including the evidence of non-examiners. Id. at 13-13. The court does not find error.

Listings 12.04 and 12.06 both require that a claimant have an "extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) [u]nderstand,

9

remember, or apply information; (2) [i]nteract with others; (3) [c]oncentrate, persist, or maintain pace; [or] (4) [a]dapt or manage oneself." 20 C.F.R. pt. 404, subpt. P, appx. 1, §§ 12.04 and 12.06 (2017). In assessing mental residual functional capacity (MRFC) the ALJ's decision "*must* include a specific finding as to the degree of limitation in each of the functional areas" and "contain a 'narrative rationale'" for the conclusions reached. Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).

The ALJ's assessment of Neilsen's limitations in each functional area is well supported. The ALJ's decision initially compares the testimony provided by Neilsen in her 2014 Function Report (Exh. B5E AR 366-374) to the assessments provided by Dr. Kuper in a Mental Impairment Questionnaire (Exh. B12F AR 2941-45), to explain the degree of limitation found in each of the functional areas. AR 19. This section of the decision does lack a narrative rationale to support the specific findings as to functional limitations. However, the subsequent RFC analysis provides discussion of the weight given to Dr. Kuper's findings, the findings of State Agency medical consultants, and references to the medical record which do support the ultimate conclusions. AR 20-24.

Neilsen's argument that she was rated markedly limited in four categories is unpersuasive for several reasons: because of the little weight assigned by the ALJ to Dr. Kuper's opinion, which is discussed below; because the Mental Impairment Questionnaire is not equivalent to an MRFC assessment; and because the record does not support the findings that plaintiff urges. The Mental Impairment Questionnaire is essentially a worksheet to help determine a claimant's RFC; it does not substitute for the ALJ's RFC finding. See Israel v. Astrue, 494 Fed.Appx. 794, 797 (9th Cir. 2012) (finding that a form instructing physicians to rate a claimant's abilities in broad terms, such as "moderately limited," in areas of functioning is merely a worksheet and does not constitute an RFC assessment). Though the categories and ratings on the questionnaire mirror the standards articulated in 20 C.F.R. pt. 404, subpt. P, appx. 1 it is separated into broader subcategories for each area of functioning. All but one of the subcategories which Dr. Kuper has rated as a "marked degree of limitation" fall under the broader category of "Concentration and Persistence." AR 2944. Therefore, even if this questionnaire were to be fully credited, it would

support a finding of marked limitation in only one of the four categories specified in listings 12.04 and 12.06.

Dr. Kuper's own notes from appointments with Neilsen do not support a finding of marked limitations. A marked limitation is one in which a claimant's "functioning in [the] area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.00F2(d). Dr. Kuper rated Neilsen's Functional Status Impairment at each appointment on a scale where "0 = none and 10 = all the time" and consistently rated Neilsen as a 4. AR 2445, 2453, 2482, 2490, 2499, 2782, 2791, 2815, 2823, 2828, 2833, 2853, 2858. Additionally, Dr. Kuper's notes described Neilsen's concentration, attention, and memory as "normal" and "intact." AR 2417. Subsequent notes did state decreases in these abilities and effects on her functional status, however they had no specific discussion of how they were affected or to what degree, and Dr. Kuper did not change his overall rating of Neilsen's functional status impairment to a higher value. AR 2416, 2446, 2454, 2483, 2491, 2500, 2783, 2792, 2816, 2824, 2829, 2834, 2854, 2859. Therefore, Dr. Kuper's own notes appear to fall short of the standard indicated on the questionnaire.

Additionally, Neilsen's records from other treating physicians and the reports of the State Agency consultants do not support a finding of two or more marked limitations. Neilsen's treating physicians have consistently found her concentration and overall mental status to be within normal limits or at most moderately impaired. AR 449-50, 456, 460-61, 465, 470, 511, 513, 564, 595, 601, 606, 620, 1022, 1024, 1634, 1692, 1698, 1704, 1728, 2094, 2096. The State Agency consultants followed the psychiatric review technique ("PRT") in evaluating Ms. Neilsen. AR 112-13, 127-28, 145-46, 161-62. These assessments support the ALJ's findings as to the degree of functional limitation for each category. AR 113, 128, 146, 162. Only one evaluator, Dr. Klein, identified one subcategory in which Neilsen had marked limitations. This was plaintiff's "ability to interact appropriately with the general public," which is only one factor to be considered in evaluating an individual's functional capacity to interact with others. AR 150, 166. For all these reasons, the record does not support a finding of any more than one marked limitation. The court concludes that the ALJ properly assessed Neilsen's MRFC.

### D. The ALJ Did Not Properly Weigh the Opinion of All Medical Professionals

#### 1. The Medical Opinion Evidence

The record before the ALJ included the medical opinion of plaintiff's treating clinical psychologist, Dr. Bradley Kuper, Ph.D., and those of four State agency medical consultants, D. Pong, M.D., A. Dipsia, M.D., H. Barrons, Psy.D., and P. Klein, Psy.D. The treating physician opined that plaintiff's pain, anxiety, depression, and other symptoms were severe enough to interfere with the attention, concentration, and physical ability needed to perform even simple work-related tasks; that she would not be able to be physically active for more than 30 minutes at a time; that she would require unscheduled breaks every hour and would likely be absent more than three times per month. AR 2944-45. In contrast, Drs. Dipsia and Pong each found that Neilsen was capable of standing or walking for six hours, and sitting for six hours, in an eight-hour work day. AR 107-136 (Dipsia evaluations); AR 139-170 (Pong evaluations). Drs. Barrons and Klein each found that Neilsen was capable of maintaining concentration for simple routines throughout a normal workday and workweek and that she only had mild-to-moderate limitations. AR 107-136 (Barrons evaluation); AR 139-170 (Klein evaluation).

The ALJ gave little weight to the opinion of Dr. Kuper, finding that it was not supported by the medical record. AR 23. The ALJ credited the opinions of Drs. Dipsia, Pong, Barrons, and Klein, and incorporated the limitations they found into the assessed RFC and MRFC. AR 23-24.

#### 2. Principles Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 642, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

The ALJ will consider (1) the length of the treating relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating source when assessing the weight of a medical opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "[A]n ALJ may discredit [a] treating physician['s] opinion[] that [is] conclusory, brief, and unsupported by the record as a whole … or by objective medical findings." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)).

### 3. The ALJ Erred in Assigning Little Weight to Dr. Kuper's Opinion

Dr. Kuper's opinion is contradicted by the opinion of agency physician Dr. Barrons, who assessed only mild to moderate limitations, so the ALJ must provide specific and legitimate reasons for discrediting Dr. Kuper. AR 23, 113. The ALJ's broad references to the "totality of the record," and unsubstantiated assertion that Dr. Kuper's assessed limitations are not consistent with plaintiff's daily activities, does not suffice. AR 23. The ALJ erred in assigning little weight to Dr. Kuper's opinion without articulating a specific and legitimate basis for that asessment.

### 4. The ALJ's Assignment of Little Weight to Dr. Kuper's Opinion Was Harmless Error.

While plaintiff is correct that the ALJ did not provide sufficiently specific reasons for

discrediting the opinion of Dr. Kuper, the court finds that the error was harmless because substantial evidence supports the ALJ's ultimate conclusion on disability and no reasonable ALJ on remand would reach a materially different decision on plaintiff's limitations. An error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." Stout v. Comm'r, Soc. Sec. Admin, 454 F.3d 1050, 1055 (9th Cir. 2006); see also, Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that an ALJ's error is harmless so long as substantial evidence supports the ultimate conclusion). "So long as there remains 'substantial evidence supporting the ALJ's conclusions' and the error 'does not negate the validity of the ALJ's ultimate conclusion,' such is deemed harmless and does not warrant reversal." Id. Other circuits have applied the harmless error standard for the discount of lay witness testimony expressed in Stout to the discount of a treating physician's opinion. See McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011) (holding that an ALJ's failure to explain the weight given to a physician's opinion was harmless error because no reasonable ALJ would reach a contrary decision on remand regarding the claimant's limitations). This approach comports with the ultimate holding in Stout that an error is harmless when it is "inconsequential to the ultimate nondisability determination." Stout at 1055.

In the present case, the court finds that no reasonable ALJ presented with the same record would reach a different conclusion as to the ultimate disability determination, and that such a finding is supported by substantial evidence in the record. Because Dr. Kuper's opinion as to disability is inconsistent with his own notes, inconsistent with the findings of other physicians, and is brief, conclusory, based on a limited treatment interaction, and unsupported by the record, it was properly rejected.

        a.    Dr. Kuper's Assessment is Brief, Conclusory, and Based upon a Limited Treatment Interaction.

Dr. Kuper is a clinical psychologist who began seeing Neilsen for pain management in August of 2015. AR 1632. Dr. Kuper had appointments with Neilsen about every 3 to 4 weeks and all but 2 of these appointments were conducted over the telephone. AR 1632 (in person), 2415 (in person), 2445, 2453, 2482, 2499, 2782, 2791, 2815, 2823, 2828, 2833, 2853, 2858.

Accordingly, Dr. Kuper's observations are primarily based on Neilsen's subjective complaints. AR 2447, 2455, 2784, 2793, 2816, 2830, 2835, 2855. Opinions based primarily on subjective complaints have been held to carry little weight in disability determinations. See <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). Additionally, Dr. Kuper's opinions are both brief and conclusory. Dr. Kuper consistently notes that Neilsen is "unable to work due to pain," however there is no explanation offered for this finding in the accompanying notes. AR 1634, 2416, 2446, 2454, 2483, 2491, 2500, 2783, 2792, 2816, 2824, 2829, 2834, 2854, 2859. The only other supporting document is the Mental Impairment Questionnaire completed by Dr. Kuper which offers as explanation for Neilsen's inability to work opinions that she would be absent more than three times per month and would be unable to remain active for more than 30 minutes at a time. AR 2945. This checklist does not provide sufficient support for the claim that Neilsen is unable to work, because it is itself unsupported by clinical findings. See <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (finding that a checklist was brief and conclusionary in form and did not provide support for a conclusion of disability in the absence of objective medical evidence in the physician's treatment notes). Dr. Kuper did not identify any specific basis for the opinions as to breaks and absences, and the court's independent review of the medical record fails to reveal any substantial supporting evidence.

        b.   <u>Dr. Kuper's Opinion is Inconsistent with His Own Records.</u>

Dr. Kuper's opinion is inconsistent with his own notes generated from his appointments with Ms. Neilsen. As discussed above, Dr. Kuper rated Neilsen's functional status impairment at each appointment and consistently rated her as being impaired only some of the time (rating of 4 out of 10 with a 10 representing being impaired "all the time") and did not change this rating throughout the treatment relationship. AR 2445, 2453, 2482, 2490, 2499, 2782, 2791, 2815, 2823, 2828, 2833, 2853, 2858. This functional status impairment assessed the four areas Dr. Kuper has identified as being affected by Neilsen's impairments: "normal routine, occupational functioning, social activities or relationships, [and] [r]ecreational activities." AR 1634, 2416, 2446, 2454, 2483, 2491, 2500, 2783, 2792, 2816, 2824, 2829, 2834, 2854, 2859. Therefore, this rating does not support Dr. Kuper's finding of substantial absences from work. Additionally, Dr.

Kuper's notes show that he maintained a treatment plan with Ms. Neilsen consisting primarily of mindfulness exercises and meditation which did have positive outcomes over the course of treatment. AR 2417, 2447, 2484, 2492, 2784, 2825, 2830, 2855, 2860. Therefore, Dr. Kuper's own notes offer no explanation or support for the disabling limitations assessed in the Mental Impairment Questionnaire or in his September 13, 2016 letter. AR 1656, 2941-2945.

The medical records attributed to Neilsen's other treating physicians do not support the disability conclusions reached by Dr. Kuper. Neilsen's medical records from treating physicians show at most moderate impairments in her regular ability to function. AR 449-50, 456, 460-61, 465, 470, 1022, 1024, 1634, 1692, 1698, 1704, 1728, 2094, 2096. Neilsen's physical therapists noted that she was responding to therapy and showed improvements; these records do not support Dr. Kuper's claim that she would need an unscheduled break every hour. AR 1640 (assessed as able to sit for 2 hours), 2422-24 (now able to sit up to 3 hours and walking has become more even). The only mention of absences in the medical records come from Neilsen's self-reports of not being recalled from lay-off status for a past job due to absences, and no other physician has assessed her as needing significant amounts of time away from work. AR 563, 594, 640. There is no indication that Neilsen's treatment for her conditions would require her to be absent from work a significant amount of time as she has not been scheduled for intensive physical therapy. AR 1639. Therefore, Dr. Kuper's assessment of disabling limitations is inconsistent with the findings of Neilsen's other treating providers.

Because the record provides ample support for the ALJ's decision to give Dr. Kuper's opinion light weight, and because the court finds on this record that no reasonable ALJ would reach an alternate conclusion regarding plaintiff's limitations on remand, the ALJ's failure to articulate sufficiently specific reasons for discounting Dr. Kuper's opinion constitutes harmless error.

### E. The ALJ Did Not Err in Discounting Lay Witness Testimony.

The ALJ did not err in his treatment of Neilsen's subjective testimony. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged … In this analysis, the claimant is not required to show that [their] impairment could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective evidence of the pain or fatigue itself is not required. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

An ALJ must provide clear and convincing reasons for rejecting a claimant's subjective testimony. Id. While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas, 278 F.3d at 958. An ALJ "must give reasons that are germane to each witness" when determining credibility and the similarity of testimony of an interested witness to the claimant's own complaints is a sufficiently "germane" reason. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

At the hearing Neilsen testified that she uses a cane to get around. AR 76. She stated that the majority of her day is spent lying down, and that she can sit upright for only about an hour at a time. AR 72, 82, 93. Neilsen also stated that she has issues with her memory, concentration and retention. AR 87, 90, 92-93. She also testified that on a bad day her depression and pain will occasionally prevent her from doing anything at all for an entire day. AR 89.

The ALJ found that Neilsen's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistence with the medical evidence and other evidence in the record." AR 22. Inconsistency between subjective testimony and objective medical evidence is a permissible basis for rejecting the testimony. See 20 C.F.R. §§ 404.11529(c)(4), 416.929(c)(4); Bayliss at 1218. In this case the ALJ permissibly relied on inconsistencies between the medical record and Neilsen's statements about her physical limitations. One such inconsistency the ALJ identified was the fact that Neilsen "no longer takes opioid or other strong pain medications" as a part of her treatment. AR 22. Additionally, the ALJ

17

noted that Neilsen is "able to walk and move about in a satisfactory manner" and that her "coordination is intact." AR 22-23; see AR 114, 126, 129, 532, 1592-93, 1625, 1627, 1641, 2423-24.

The ALJ points to several portions of the record indicating that plaintiff's subjective assessment of her mental impairments does not match objective examinations. AR 23. The ALJ notes that Neilsen's insight and judgment were assessed within normal limits. AR 23; see AR 455, 532, 564, 595, 1634, 1658, 2265. Additionally, the ALJ relied on Global Assessment of Functioning scores in the 61-70 range to find that Neilsen is able to "function[] pretty well and ha[ve] some meaningful interpersonal relationships." AR 23; see AR 111, 2218, 2263, 2270.

The ALJ reasonably found that Neilsen's daily activities do not support the degree of debilitation expressed in her subjective complaints. AR 22. Neilsen testified that she could not sit for more than an hour and had trouble concentrating on or engaging in activities. AR 72, 82, 92. However, she also stated that she could drive, run errands, perform her physical therapy exercises, care for pets, craft, and handle her own finances. AR 60, 69, 71, 85, 367, 369. Neilsen's engagement in numerous daily activities that could be transferred to the workplace gave the ALJ a permissible reason to discredit her subjective allegations. Fair, 885 F.2d at 603.

Because the ALJ identified substantial evidence that supports the credibility finding, this court "may not engage in second-guessing." Thomas, 278 F.3d at 958. Therefore, the ALJ did not err in his evaluation of plaintiff's subjective testimony.

The ALJ also did not err in discounting the lay person testimony of Neilsen's fiancé. The ALJ noted that Mr. Vazquez's testimony "largely reiterated the claimant's description of her activities and limitations." AR 22. The court's review of the Third Party Function Report submitted by Mr. Vazquez found no significant differences from the Function Report submitted by Ms. Neilsen. Therefore, in light of the proper rejection of Neilsen's own testimony, the repetitive nature of the witness's testimony was a sufficiently germane reason to reject it. See Valentine v. Astrue, 574 F.3d 685, 694.

////

////

# VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20), is GRANTED;

3. The Clerk of the Court shall enter judgment for the Commissioner, and close this case.

DATED: September 26, 2019

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE